COMMONWEALTH of Pennsylvania,
Appellant

v.

Kevin ALSTON, Appellee.

Superior Court of Pennsylvania.

Submitted May 25, 2004.

Filed Dec. 13, 2004.

Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Larry Feinstein, Philadelphia, for appellee.

Samuel H. Israel, Philadelphia, Amicus Curiae, for L.B.

Before: HUDOCK, JOYCE, MUSMANNO, KLEIN, BENDER, BOWES, GANTMAN, MCCAFFERY, and PANELLA, JJ.

OPINION BY BOWES, J:

¶ 1 The Commonwealth filed this appeal from a pretrial order containing three adverse rulings, and it challenges two of those rulings. Specifically, the Common-

wealth questions the propriety of the trial court's conclusions that the Commonwealth must allow the defense access to notes taken during an interview with the victim and that the victim in this sexual assault case must undergo a psychiatric examination to assist in assessing her competency. Before addressing the merits of these two contentions, we must decide whether the Commonwealth has preserved the issues for appellate review and whether the appeal is properly before us. Upon review, we conclude that the Commonwealth has avoided waiver and this Court has jurisdiction over these issues. We reverse both rulings and remand for further proceedings.

¶ 2 On August 11, 2000, Appellee, Kevin Alston, was charged with rape, incest, involuntary deviate sexual intercourse, indecent exposure, sexual assault, indecent assault, statutory sexual assault, simple assault, recklessly endangering another person, endangering the welfare of children, and corrupting the morals of a minor. Appellee was accused of sexually abusing his biological daughter, L.B., between July 24 and 29, 2000. L.B., who was ten years old at the time, reported the molestation after her mother, A.B., picked up L.B. from Appellee's residence on July 30, 2000.

¶ 3 Prior to trial, both Appellee and the Commonwealth filed several motions in limine. On January 12, 2001, the trial court held a hearing and on April 16, 2001, entered a single order disposing of those motions. The trial court granted Appellee's motions to compel the Commonwealth to provide defense counsel with a copy of the notes of an interview of the victim conducted by the assistant district attorney, to have the victim undergo a psychiatric examination to be used in evaluating her competency, and to permit the defense to cross-examine the victim about her pri-

or sexual assault accusations against two different individuals.

¶ 4 The trial court's ruling on the latter two matters was informed by the following facts:

Department of Human Services (DHS) records for [L.B.] show that she made prior accusations of sexual abuse against persons other than the Defendant. At age three (3), [L.B.] accused a school bus driver of touching her vagina. At age eight (8), she accused her maternal aunt's paramour of sexually molesting her. In regard to the latter alleged incident, a DHS child protective services worker noted in her report that the "child is not credible because she changed her story several times about how it happened." The same DHS worker further noted that all the cultures and exams in relation to this alleged incident were normal. Additionally, [L.B.'s mother] told a social worker that she believed her daughter was lying about the aunt's boyfriend.

Trial Court Opinion, 10/15/01, at 2–3.

¶ 5 The trial court concluded that the prior and potentially false allegations of sexual abuse warranted a searching inquiry into the victim's competency, including a psychiatric evaluation. The court did not interview the victim or make a competency determination but ordered a psychiatric evaluation to aid it in determining that issue. The court noted that it was unable to conclude that the past accusations were founded but "if they are a product of fabrication and fantasy, serious questions arise concerning her consciousness of the duty to speak the truth." Id. The court also ruled that Appellee would be permitted to cross-examine the victim about these past accusations and rejected the Commonwealth's position that the Rape Shield Law prohibited such cross-examination. This ruling is not at issue in

this appeal. The Commonwealth thereafter filed this appeal.

¶ 6 On appeal, we consider: 1) whether the Commonwealth has avoided a finding of waiver of all issues on appeal by obtaining the inclusion of its Pa.R.A.P.1925(b) statement into the certified appellate record; 2) whether the rulings at issue can be appealed pursuant to the collateral order exception contained in Pa.R.A.P. 313; 3) whether the Commonwealth should have been ordered to reveal the notes of its interview with the victim; and 4) whether the victim was properly ordered to undergo a psychiatric examination.

## I.  Pa.R.A.P.1925(b) Statement

■ ¶ 7 The facts concerning the Pa. R.A.P.1925(b) statement are rather convoluted. On September 6, 2001, the trial court issued an order requesting a Pa. R.A.P.1925(b) statement. The trial court apparently received the Commonwealth's statement the following day because the trial court indicates in its opinion, "A Statement of Matters Complained of on Appeal was filed on September 7, 2001." Trial Court Opinion, 10/15/01, at 2. However, the 1925(b) statement was not initially included in the certified record on appeal.

¶ 8 The Commonwealth filed its appeal on May 16, 2001. When the Commonwealth reviewed the docket entries, those entries did not reflect either the September 6, 2001 order to file a Pa.R.A.P.1925(b) statement or the Commonwealth's Statement of Matters Complained of on Appeal. Since the court order requiring the aforementioned statement was not reflected on the docket, the Commonwealth did not view as significant that its September 7, 2001 statement was likewise not included in the record. Those entries subsequently were updated by the court to reflect the filing of the September 6, 2001 order directing the Commonwealth to file a Pa. R.A.P.1925(b) statement. However, the Commonwealth was not aware of the change in the docket, and consequently took no steps to ensure that the record contained its September 7, 2001 Pa.R.A.P. 1925(b) statement.

¶ 9 On February 19, 2003, a panel of this Court ruled that the Commonwealth had waived the issues on appeal because the record did not contain a Pa.R.A.P.1925(b) statement. *See Commonwealth v. Butler*, 571 Pa. 441, 812 A.2d 631 (2002) (Pa.R.A.P. 1925 is to be strictly construed and Pa. R.A.P.1925(b) statement must be included in the certified record and a copy sent to the trial court in order for issues to be preserved on appeal).

¶ 10 The Commonwealth then filed a petition for reconsideration to the panel, explaining the Commonwealth's failure to include the statement in the record as detailed above. While requesting reconsideration, the Commonwealth simultaneously moved for correction of the record. Specifically, it obtained an order from the trial court dated March 4, 2003, and that order was transmitted to this Court as a supplemental record. The order states:

AND NOW, this 4th day of March, 2003, the omission from the record of the Commonwealth's Statement of Matters Complained of on Appeal is hereby corrected pursuant to Pa.R.A.P.1926; the Commonwealth's Statement of Matters Complained of on Appeal, which was filed on September 7, 2001, is hereby made a part of the certified Quarter Sessions File.

Order of Court, 3/4/03, at 1.

¶ 11 Based on these representations, panel reconsideration was granted, at which point the Pa.R.A.P.1925(b) state-

ment was included in the record.[1] Thus, the certified record now contains the Pa. R.A.P.1925(b) statement, and since the trial court had received a copy of that statement and issued an opinion addressing the issues contained therein, *Butler* no longer is implicated. Hence, we next consider the question of appealability.

## II. Appealability of Rulings

¶ 12 We now address whether the Commonwealth can appeal the two pretrial rulings at issue as of right.[2] The Commonwealth invokes our jurisdiction pursuant to Pa.R.A.P. 313. The collateral order doctrine, now embodied in Pa.R.A.P. 313, has three elements and permits an appeal as of right from an interlocutory order 1) if the order is separable from and collateral to the underlying action; 2) if the question on appeal involves a right too important to be denied review; and 3) if review were to be postponed until after a final order was entered, the right would be irreparably lost. *Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1220 (Pa.Super.2003); Pa. R.A.P. 313.

### A. Notes of Interview

¶ 13 The Commonwealth argues that the trial court improperly rejected its assertion of the work-product doctrine when it issued its discovery order allowing the defense to review its notes of the prosecutor's interview with L.B. Our examination of the pertinent case law reveals that the collateral order exception uniformly has been applied when the appellant has asserted the existence of a privilege. Indeed, our Supreme Court's recent pronouncement in *Commonwealth v. Dennis,* — Pa. —, 859 A.2d 1270 (2004), is controlling. At issue therein was whether a discovery order compelling the Commonwealth to produce to the defense notes taken during the jury selection process was appealable under Pa.R.A.P. 313. The defendant therein was asserting that the prosecutor exercised peremptory challenges to potential jurors in a racially-motivated manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Commonwealth argued that the notes were protected by the work-privilege doctrine and that the discovery order was a collateral order, thereby triggering jurisdiction of our appellate courts. Our Supreme Court accepted jurisdiction over the order based upon the Commonwealth's invocation of the collateral order doctrine.

¶ 14 Concluding that its prior decision in *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547 (1999), was analogous, the Supreme Court held that the first prong of the collateral order exception was present since the question of privilege could be addressed without analyzing the merits of the underlying criminal action. *Accord id.* (discovery order that was purportedly erroneously entered because it violated statutory and executive privileges could be reviewed without reviewing merits of underlying negligence action). The Court held that the third prong of the test was also satisfied because "there is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." *Dennis, supra* at ——, 859 A.2d at 1278 (quoting *Ben, supra* at 485, 729 A.2d at 552).

¶ 15 The Court then moved on to address the second prong, whether the right

---

1. After the panel rendered a decision on the merits, the Commonwealth requested *en banc* reargument, which was granted; that brings us to the present posture of this matter.

2. Under *Commonwealth v. White,* 818 A.2d 555 (Pa.Super.2003), each ruling of the trial court must be analyzed separately as to the Commonwealth's right to appeal even though the rulings are contained in a single order.

to protection of work product was too important to be denied review, noting that the importance standard is met only if the right involved is deeply rooted in public policy and has an impact beyond the litigation at issue. It ruled that the work product privilege reached that level of importance, stating: "It is beyond question that the exercise of a privilege is an important right deeply rooted in public policy. The work product doctrine is one of the most fundamental tenets of our system of jurisprudence, and ... inures most notably to the benefit of criminal defendants." *Id.* at ——, 859 A.2d at 1278. *See also Slusaw v. Hoffman,* 2004 PA Super 354 (order denying motion to quash subpoenas appealable under Pa.R.A.P. 313 where subpoenas were issued to party's former attorneys and attorneys invoked attorney-client privilege); *PECO Energy Co. v. Insurance Co. of North America,* 852 A.2d 1230 (Pa.Super.2004) (the appellants argued discovery order violated attorney-client, work-product, and trade secret privileges; we accepted appellate review under Pa.R.A.P. 313 because colorable claim of privilege was asserted); *Gocial, supra* (accepted appeal under Pa.R.A.P. 313 from order compelling production of documents that were purportedly privileged); *Dibble v. Penn State Geisinger Clinic, Inc.,* 806 A.2d 866 (Pa.Super.2002) (pursuant to collateral order exception, we reviewed order denying motion for confidentiality order to prevent dissemination of information that allegedly included trade secrets and was protected by constitutional right to privacy).

¶ 16 As it is clear that the collateral order exception was properly invoked in this case, we accept jurisdiction over the portion of the order compelling the production of the notes of L.B.'s interview.

### B. Psychiatric Examination

¶ 17 We now determine the appealability of the pretrial ruling requiring a psychiatric examination.[3] This ruling clearly is separable from the main cause of action because the propriety of the order may be addressed without analysis of the merits of the underlying criminal action. *See American Independent Insurance Co. v. E.S.,* 809 A.2d 388 (Pa.Super.2002) (discussing when ruling is separate from main cause of action). Second, important constitutional privacy rights of the child victim are being invoked, the matter impacts cases beyond the one at issue, and constitutional-based privacy rights are too important to be denied review. *Ben, supra; In the Matter of K.D.,* 744 A.2d 760 (Pa.Super.1999) (reviewing propriety of order compelling parent to undergo psychiatric evaluation in proceedings under Juvenile Act, 42 Pa.C.S. § 6301, and concluding order violated parent's constitutional privacy rights); *see also In the Matter of T.R.,* 557 Pa. 99, 731 A.2d 1276 (1999) (discussing constitutional right to privacy in context of court order compelling psychological examination) (per three justices with one justice concurring in the result); *In re "B,"* 482 Pa. 471, 394 A.2d 419 (1978) (discussing right to prevent psychiatric records from being revealed during litigation under constitutional provisions) (plu-

---

**3.** We are aware of the *en banc* decision in *Commonwealth v. Shearer,* 828 A.2d 383 (Pa.Super.2003), *appeal granted,* —— Pa. ——, 856 A.2d 834 (2004). In that case, this Court held that the Commonwealth could not appeal pursuant to Pa.R.A.P. 311(d), which permits an appeal as of right from an order that would terminate or substantially handicap the prosecution from a pretrial order requiring a witness to undergo a psychiatric examination. However, that decision did not address whether an appeal would properly lie under Pa.R.A.P. 313, which is the issue under consideration herein. Thus, *Shearer* is not controlling in this matter. *See Commonwealth v. Perez,* 698 A.2d 640 (Pa.Super.1997) (case is not binding on an issue not addressed).

rality); *J.S. v. Whetzel,* 2004 PA Super 406, 860 A.2d 1112 (order requiring disclosure of tax documents appealable under collateral order exception due to importance of privacy interest in income information). Lastly, if the court's order cannot be reviewed before the examination is conducted, the claim will be lost forever. Thus, the ruling requiring the victim to undergo a psychiatric examination properly is also subject to review under the collateral order exception.

### III. Merits Determinations

### A. Disclosure of Interview Notes to Defense

■■■ ¶ 18 The Commonwealth challenges the trial court's order that it disclose certain notes that were handwritten by the assistant district attorney during an interview with L.B. The Commonwealth asserts those notes were not subject to discovery by the defense because they were not verbatim and because they constituted work product. Appellee sought the records to examine the possibility that the victim's statements to the prosecutor were inconsistent with other statements the child had made, and thus constituted exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

> Appellate courts generally review the grant or denial of discovery requests for an abuse of discretion. *Commonwealth v. Williams,* 557 Pa. 207, 223 n. 5, 732 A.2d 1167, 1175 n. 5 (1999). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Hess,* 745 A.2d 29, 31 (Pa.Super.2000).

*Commonwealth v. Jackson,* 785 A.2d 117 (Pa.Super.2001).

¶ 19 The Pennsylvania Rules of Criminal Procedure provide for disclosure by the Commonwealth, at the request of the defense and in the discretion of the trial court, all written statements and "substantially verbatim oral statements" of eyewitnesses that the Commonwealth intends to call at trial. Pa.R.Crim.P. 573.

¶ 20 We initiate our discussion with an examination of a seminal case in this area, *Commonwealth v. Brinkley,* 505 Pa. 442, 480 A.2d 980 (1984). In *Brinkley,* the defense argued that the trial court had erred when it permitted the Commonwealth to examine defense counsel's notes taken during interviews with defense witnesses. Defense counsel argued that the statements were protected by the work-product privilege and also were notes of his recollections rather than verbatim written notes of the interviews.

¶ 21 The *Brinkley* Court was able to discern from the record that, contrary to the defense's assertion, the notes were substantially verbatim statements of the witnesses. Based on this factual finding, the Court rejected the defense's invocation of the work product privilege, ruling that where either the Commonwealth or the defense has pretrial statements of its witnesses that were reduced to writing and that concern the witness's trial testimony, those statements are subject to discovery. The Court held that the work product privilege, which is a qualified one, will not remove such statements from disclosure. *Accord Commonwealth v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976) (new trial awarded where defense was denied access to review pretrial statements made by Commonwealth witnesses); *Commonwealth v. Morris,* 444 Pa. 364, 281 A.2d 851 (1971) (where police officer conducted in-

terview of victim in rape prosecution and took extensive notes, those notes were subject to discovery by defense); *see also Commonwealth v. Contakos,* 492 Pa. 465, 424 A.2d 1284 (1981) (majority of the court agreeing that defense is entitled to notes of any interviews conducted by the prosecution where the notes are substantially verbatim record of the interview; three justices suggesting that any notes of interviews, even though that are not verbatim or substantially verbatim, are subject to discovery).

¶ 22 The issue was more recently examined in *Commonwealth v. French,* 531 Pa. 42, 611 A.2d 175 (1992). In that case, the defense was denied access to pretrial statements by police officers who were witnesses at trial because those statements were made in the course of a police internal affairs investigation and were purportedly privileged. The Court rejected the asserted privilege and made the following observations:

> "Relevant, pre-trial statements of witnesses in the possession of the Commonwealth must be made available to the accused, upon request, during trial." *Commonwealth v. Morris,* 444 Pa. 364, 366, 281 A.2d 851 (1971). Moreover, a determination of whether the statements of the prosecution witnesses would have been helpful to the defense is not to be made by the prosecution or the trial court. *Commonwealth v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976). "Matters contained in a witness' statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness." *Id.* at 429, 353 A.2d at 429.
>
> . . . .
>
> The defense is entitled to examine pretrial statements of prosecution witnesses

in order to have a fair opportunity to cross-examine those witnesses. *See Grayson, supra.* Consequently, denial of that right implicates the Confrontation Clause.

*Id.* at 51–52, 611 A.2d at 179–80. While there is no express finding in the *French* opinion that the statements were verbatim or substantially verbatim reflections of the interviews, the context would lead to a conclusion that they were.

■ ¶ 23 These Supreme Court pronouncements leave no doubt that, whether or not the interview summary consists of "notes," discovery of any written recording of an interview conducted of a Commonwealth witness by the prosecution is compelled when the interview notes are extensive and constitute a substantially complete recording of the interview conducted of the witness. An assertion of work product privilege will not relegate such notes to the realm of protection against disclosure.

■ ¶ 24 In the present case, the assistant district attorney insisted that her notes were not verbatim and merely were "jotted down shorthand notes" taken of "less than half of what [the victim] told me . . . ." N.T. 1/12/01, at 6. Nevertheless, the assistant district attorney's assertions mirror those of the attorney in *Brinkley, supra.* Unlike the Court in that case, however, we have no record upon which to base a determination that the district attorney's characterization is accurate. Therefore, the trial court must examine the notes to determine a single fact: whether the notes are extensive and substantially recreate what the victim told the prosecutor. If the notes indeed are a substantially verbatim recount of the interview that the assistant district attorney conducted with L.B., they are subject to discovery. Thus, we remand for a determination of this question.

## B. Psychiatric Examination of Minor Victim

¶ 25 We now address the propriety of the order compelling L.B. to undergo a psychiatric examination. After careful review, we conclude that based on the present state of the record, the need for a psychological examination has not been demonstrated, and we remand for proper development of this question. The court ordered the examination solely because L.B. had leveled two prior accusations of abuse against different people. The Department of Human Service records established that when she was three years old, L.B. accused a bus driver of touching her. Four years later, she accused her aunt's paramour of molesting her. A DHS investigator determined that this latter accusation was false based on inconsistencies in L.B.'s statements and the results of certain cultures taken from the victim.

¶ 26 The transcript reveals that the examination was premised upon three concerns:

The Court: I'll tell you what I believe the issue is. The [issue] is **whether or not this child can distinguish between right, wrong and fantasy based upon her past history.** So that is the scope of the psychiatric exam, and it's warranted in that regard. A child's credibility is always an issue. In a matter like this credibility is always an issue, even with a child witness.

[Assistant District Attorney]: Your Honor does not want to *voir dire* her or–

The Court: No, that's not going to prove anything, not a thing. That may be necessary later, but I want some basic advice from a qualified person.

. . . .

[Defense Counsel]: I join the district attorney in asking the court to do a preliminary *voir dire* of the victim.

The Court: Not now. Not at this juncture it will not be done.

[Defense Counsel]:—because I think that the case law probably says we have to do that to warrant the court ordering a psychiatric exam if you have a foundation.

The Court: I don't think so.

[Defense Counsel]: All right.

The Court: It's warranted based on all the information I have before me with respect to this child's past history. There's no question about it. What more am I going to learn from her? Nothing more. We need a qualified expert to make that determination.

N.T., 4/16/01, at 7–9 (emphasis added).

¶ 27 Three important facts are established by this excerpt. First, the trial court was concerned with the ability of the victim to distinguish between fantasy and reality, which is a competency determination.[4] Second, the psychiatric examination was ordered solely because the victim made two prior abuse allegations, and third, the court refused to *voir dire* the victim before ordering her to submit to the examination, despite requests by both the defense and the Commonwealth.

¶ 28 The question of a person's competency to be a witness is vested within the sound discretion of the trial court. *Commonwealth v. D.J.A.*, 800 A.2d 965 (Pa.Super.2002) (*en banc*). When a trial court addresses the competency of a

---

4. We note the trial court's inconsistency. It states that the question involves the child's "credibility" on two occasions. However, it is clear that the court's true concern was the child's ability to distinguish between reality and fantasy, which is a competency determination. The trial court's opinion clarifies that the psychiatric examination was ordered to explore competency rather than credibility. Trial Court Opinion, 10/15/01, at 4.

young child, it must determine if the child has: (1) the capacity to communicate, which includes both the ability to understand questions and to frame and to express intelligent answers; (2) mental capacity to observe the occurrence itself and the capacity to remember what it is that she is called to testify about; and (3) a consciousness of the duty to speak the truth. *Id.* In rendering a decision about competency, a court may rely on expert testimony. *Id.; Commonwealth v. R.P.S.,* 737 A.2d 747 (Pa.Super.1999) (trial court is permitted to consider psychiatric testimony on issue of witness's competency).

¶ 29 While the court may consider such testimony, the question of whether it may order a psychiatric examination against a person's wishes is an entirely distinct inquiry. The privacy implications of a compelled psychiatric examination are significant. Indeed, where the record fails to establish that there is a question as to the victim's competency, we refuse to sanction any intrusion into the victim's existing psychological records or any cross-examination as to psychiatric treatment. *See Commonwealth v. Smith,* 414 Pa.Super. 208, 606 A.2d 939 (1992). The order in question is much more intrusive as it compels a psychiatric examination and not merely permits questioning concerning existing treatment.

¶ 30 Addressing the precise issue at hand, a plurality of our Supreme Court has concluded that a psychiatric examination of a Commonwealth witness regarding competency may be ordered if a need for the examination is demonstrated. *Commonwealth v. Garcia,* 478 Pa. 406, 387 A.2d 46 (1978). Here, however, the trial court ordered a psychological examination of L.B. without ever interviewing her and based solely on the DHS records regarding L.B.'s prior allegations of abuse. This record clearly does not demonstrate need.

¶ 31 There can be no doubt that a court-ordered psychiatric examination would allow intrusion into an important aspect of human privacy concerns. *In re T.R., supra* (per three justices with one justice concurring in the result) (mother's state constitutional right to privacy precluded trial court from compelling her to participate in psychological evaluation for purposes of proceedings under Juvenile Act); *see also In the Matter of K.D.,* 744 A.2d 760 (Pa.Super.1999) (trial court erred in ordering parent to undergo psychiatric examination in violation of parent's constitutional privacy rights in proceeding under the Juvenile Act). We conclude that such an examination should not be ordered unless the record demonstrates the existence of a compelling reason for the examination.

¶ 32 In light of the prior and apparently unfounded allegations, we appreciate the trial court's reservations about L.B.'s competency. While trial courts regularly make competency determinations, a court-ordered psychological examination should never be the starting point for such a determination. The trial court here did not even observe the witness or examine her; therefore, the order directing the involuntary examination cannot be sustained on the face of the existing record. *See Commonwealth v. Dolhancryk,* 273 Pa.Super. 217, 417 A.2d 246 (1979) (absent evidence that witness suffered mental defect rendering him incapable of testifying truthfully, no psychiatric examination was warranted where allegations of incompetency related to credibility, not to ability to tell truth). The fact that the witness in the instant case is an alleged child victim of sexual abuse does not negate the requirement that necessity be shown.

¶ 33 Our review of case law from other jurisdictions substantiates that mandated psychiatric examinations of sexual assault victims are not favored and are permitted

only after a showing of compelling reasons or substantial need. *See, e.g., Government of the Virgin Islands v. Leonard A.*, 922 F.2d 1141 (3rd Cir.1991) (substantial need for psychiatric testing of child sex victim is necessary); *State v. Osgood*, 667 N.W.2d 687 (S.D.2003) (psychiatric examination of sexual abuse victim will not be ordered without substantial showing of justification); *State v. Redd*, 642 A.2d 829 (Del.Super.1993) (compelling reason required for psychiatric examination of alleged victim of sex crime); *State v. R.W.*, 104 N.J. 14, 514 A.2d 1287 (1986) (substantial showing of need and justification required before ordering psychiatric examination of a witness); *Forbes v. State*, 559 S.W.2d 318 (Tenn.1977) (psychiatric examination of complaining witness in sexual assault case should not be ordered absent compelling reason); *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979) (same); *Ballard v. Superior Court of San Diego*, 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838 (1966) (same) (superseded by statute as stated in *People v. Haskett*, 30 Cal.3d 841, 180 Cal.Rptr. 640, 640 P.2d 776 (1982)); *see also Dinkins v. State*, 244 So.2d 148 (Fla.App.1971) (victim of sexual assault should be required to undergo psychiatric examination only under compelling and extreme circumstances).

¶ 34 Based on allegations of abuse that DHS concluded were unfounded, a further inquiry certainly is warranted in this case. However, in the absence of some affirmative indication that L.B. does indeed have a problem distinguishing fantasy from reality, the examination was ordered prematurely.

¶ 35 We find guidance in our Supreme Court's decision in *Commonwealth v. Delbridge*, 578 Pa. 641, 855 A.2d 27 (2003), which was disseminated after the trial court issued its order in this case. In *Delbridge*, the defendant was convicted of sexually abusing his two children when they were three years old and six years old, respectively, and he argued that their testimony was tainted by the implantation of false memories. The Court considered whether the concept of taint should be recognized and whether the issue of taint should be explored during a hearing to determine a victim's competency. Taint consists of the implantation of false memories of abuse through suggestion by an interested adult or through improper interview techniques, as raising a legitimate challenge to a witness's competency. The Court concluded that taint can infect the child's ability to recall events and testify truthfully, both of which relate to competency. The Court thus held that when a defendant presents some evidence of taint, that issue should be explored at a competency hearing, and it remanded for such a hearing in that case.

¶ 36 The decision on appeal after the competency hearing was issued recently and also is of interest to the matter at hand. *Commonwealth v. Delbridge*, —— Pa. ——, 859 A.2d 1254 (2004) (plurality). At the hearing, the children's testimony established their competency, and the defendant failed to prove the existence of taint either through cross-examination or the testimony of other witnesses. The Commonwealth and the defense presented diametrically opposed expert testimony on whether the victims' testimony was tainted. Three justices concluded that since the defendant had failed to demonstrate the existence of taint as a predicate matter, the expert testimony was unnecessary. It left open the question of whether expert testimony would be appropriate if the possibility of taint is raised in the record and if the trial court determines that expert testimony would aid it in assessing the impact of the taint on the question of competency.

¶ 37 Applying the rationale of the *Delbridge* decisions to the case under consideration, we conclude the following. Appellee has presented sufficient evidence to raise a question concerning L.B.'s competency. The prior allegations of abuse, which appear to be false, raise concerns about L.B.'s ability to tell the truth, and a hearing to explore competency certainly is warranted. However, the second *Delbridge* holding reinforces our conclusion that a psychiatric examination was ordered prematurely. If the competency hearing fails to reveal the existence of valid competency concerns, expert testimony would be unnecessary. Hence, we remand for further development of the facts relating to L.B.'s competency.

## V. Conclusion

¶ 38 We conclude that the Commonwealth has overcome the doctrine of waiver by including in the record its previously transmitted Pa.R.A.P.1925(b) statement. We also find that the two pretrial rulings at issue are appealable as collateral orders. We ask the trial court to make a factual determination on the record about whether the assistant district attorney's notes of her interview with the victim are fairly complete and should therefore be subject to discovery. Finally, we hold that the trial court improperly ordered the victim to undergo a psychiatric examination without first conducting a hearing on the question and establishing the existence of a compelling need for the examination.

¶ 39 Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.