J. A03039/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
ROBERT CARAVELLA, :
:
Appellant : No. 2181 MDA 2013

Appeal from the Judgment of Sentence October 28, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division No(s).: CP-40-CR-0001431-2011

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
ROBERT CARAVELLA, :
:
Appellant : No. 2182 MDA 2013

Appeal from the Judgment of Sentence October 28, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division No(s).: CP-40-CR-0002500-2011

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 09, 2015**

Appellant appeals from the judgment of sentence entered in the

Luzerne County Court of Common Pleas following a jury trial held on April

---

[*] Former Justice specially assigned to the Superior Court.

23, 2012 ("Case Number 1")[1] and his convictions for Involuntary Deviate

Sexual Intercourse with a Child,[2] Aggravated Indecent Assault of a Child,[3]

Corruption of Minors,[4] Endangering Welfare of Children,[5] and Unlawful

Contact with a Minor.[6]

He also appeals from the judgment of sentence entered on the same

date in the Luzerne County Court of Common Pleas following a jury trial held

on December 12, 2012 ("Case Number 2") and his convictions for Criminal

Conspiracy[7] (Rape of a Child),[8] Corruption of Minors,[9] and Endangering the

---

[1] In this case, Appellant was found guilty of various crimes against his minor nieces, M.H. and S.H.

[2] 18 Pa.C.S. § 3123(b).

[3] 18 Pa.C.S. § 3125(b).

[4] 18 Pa.C.S. § 6301(a)(1).

[5] 18 Pa.C.S. § 4304(a)(1).

[6] 18 Pa.C.S. § 6318(a).

[7] Appellant was tried with his co-defendant, the child's Mother. **See** N.T., 12/12/12.

[8] 18 Pa.C.S. § 903.

[9] 18 Pa.C.S. § 6301(a)(1).

Welfare of Children.[10]  These cases were consolidated by the trial court for sentencing[11] and *sua sponte* by this Court for appeal.

Appellant contends in Case Number 1 the court erred in (1) refusing to have the child victims undergo psychological and psychiatric examinations to determine their competency to stand trial and (2) not instructing the jury that the child's testimony was suspect because of a lack of a prompt complaint and considerable period of silence.  He claims the "totality of the circumstances" of this case denied his right to a fair trial.

In Case Number 2, Appellant contends the court erred in (1) refusing to have the alleged child victim, C.C., undergo psychological and psychiatric examinations to determine his competency to testify; (2) permitting the child to testify where records and reports of his interviews provided by the Commonwealth contradicted accusations previously made concerning the instant charges; (3) refusing to dismiss charges or in allowing the child to testify after the Commonwealth produced records indicting the child was promised he "would be able to testify in a private room alone" if he agreed to testify against his parents; (4) permitting the Commonwealth to introduce evidence that the child had killed cats; (5) refusing to instruct the jury that the testimony of the child was suspect due to a lack of a prompt complaint;

---

[10] 18 Pa.C.S. § 4304(a)(1).

[11] Although the first jury trial ended on April 25, 2012, sentencing was continued, upon Appellant's request, in order for the second trial to proceed involving another victim.  N.T., 10/28/13, at 4-5.

(6) denying his motion for discovery of records involving Patricia "Patsy" Paci; (7) violating his right to due process in denying his right to impeach the credibility of witnesses; and (8) permitting the child victim and Patricia "Patsy" Paci to testify after it was disclosed the child complained she had inappropriately communicated with him. We affirm.

We adopt the facts set forth by the trial court's opinion in Case Number 1 and Case Number 2. **See** Trial Ct. Op., 6/2/14, at 4-9. On October 28, 2013, Appellant was sentenced to an aggregate total of thirty-five and one-half to seventy-one years' imprisonment. Appellant did not file post-sentence motions.[12] This timely appeal followed. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal in both cases and the trial court filed a responsive opinion addressing Case Number 1 and Case Number 2.

Appellant raises the following issues on appeal in Case Number 1:

> 1. Was [Appellant] denied his right to a fair trial by the [l]ower [c]ourt's error in refusing to have the alleged child victims undergo psychological and psychiatric examinations to determine their competency to testify?
>
> 2. Did the [c]ourt below err in not instructing the jury that A) the testimony of the child was rendered suspect because of lack of prompt complaint and that it is a factor that the jury must consider as to the sincerity of the child's complaint, and may justifiably produce doubt as to

---

[12] At sentencing, the court advised him, *inter alia*, as follows: "You have the right to file a post-sentence motion with me ten days from today. Any post-sentence motions must be filed within ten days." N.T., 10/28/13, at 80.

whether the offense indeed occurred, or whether it was a recent fabrication of the [c]hild and that B) a child's motive in making the complaints against [Appellant] following a considerable period of silence was relevant as affecting the child's veracity?

3. Under the "totality of the circumstances" of this specific case, was [Appellant] denied his right to a fair trial by of jury of his peers?

Appellant's Brief at 4-5.[13]

First, Appellant contends "[t]he [c]ourt erred in denying [Appellant's]

Omnibus Pre-Trial Motion that the [c]ourt order psychological and psychiatric

---

[13] We note that Appellant raised twenty-four errors in his Rule 1925(b) statement. Rule 1925(b)(4)(iv) provides that "the number of errors raised will not alone be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(iv). Moreover, our Supreme Court instructed that with respect to lengthy Rule 1925(b) statements, no violation is sufficient to find waiver of issues unless the trial court finds that the appellant acted in bad faith. **PHH Mortg. Corp. v. Powell**, 100 A.3d 611, 614 (Pa. Super. 2014) (some citations omitted). Although his Rule 1925(b) statement was not concise, we decline to find waiver because the trial court did not find that he acted in bad faith. **See id.** Additionally, despite raising three issues, Appellant raises sixteen averments of error in the argument section of his brief, thus violating Pa.R.A.P. 2119(a), which mandates that "arguments shall be divided into as many parts as there are questions to be argued." **See** Pa.R.A.P. 2119(a). Appellant has failed to comply with Pa.R.A.P. 2119(c). "If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appear[.]" Pa.R.A.P. 2119(c). We decline to quash. **See Powell**, 100 A.3d at 615 (refusing to quash appeal despite numerous violation of appellate briefing rules; **see also Commonwealth v. Briggs**, 12 A.3d 291, 343 (Pa. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.").

examinations of the alleged child victims to assess their competency to testify in this case." Appellant's Brief at 15-16. This is the sole averment in support of this claim of error. Our Pennsylvania Supreme Court has stated: "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009). However, in Appellant's second claim of error, he comingles this claim of competency with his averments that the court erred in denying the pre-trial motion for a psychological and psychiatric examination of the child victims to assess their reliability as fact witnesses. We will decline to find issue one waived and address them together as they are interrelated.

In Appellant's third claim, he baldly asserts the copies of records and reports of interviews which were provided to him by the District Attorney's Office indicate the alleged child victims contradicted previous accusations concerning the charges against Appellant, thus the court erred in finding the child victims competent to testify. *Id.* at 18. Although Appellant cites no law in support of this claim, we will address it as it is interrelated to the competency of the children raised in issue two.

Appellant avers he "had reason to doubt the competency of the alleged victims. Significant questions were reasonably posed concerning their mental state and the undue influence imposed upon them by their Father,

the police and caseworkers. Here, the case for examination was more so required, as the children's Mother did not believe their claims." Appellant's Brief at 16. We find no relief is due.

Our review of this issue is governed by the following principle. "The question of a person's competency to be a witness is vested within the sound discretion of the trial court." **Commonwealth v. Alston**, 864 A.2d 539, 548 (Pa. Super. 2004) (*en banc*). Pennsylvania Rule of Evidence 601 provides:

> **(a) General Rule.** Every person is competent to be a witness except as otherwise provided by statute or in these Rules.
>
> **(b) Disqualification for Specific Defects.** A person is incompetent to testify if the Court finds that because of a mental condition or immaturity the person:
>
> (1) is, or was, at any relevant time, incapable of perceiving accurately;
>
> (2) is unable to express himself or herself so as to be understood either directly or through an interpreter;
>
> (3) has an impaired memory; or
>
> (4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601.

In **Commonwealth v. Boich**, 982 A.2d 102 (Pa. Super. 2009) (*en banc*), this Court reversed the trial court and held the defendant did not show a compelling need existed for an involuntary psychiatric examination of

the victim's competence to testify.  ***Id.*** at 104.  The ***Boich*** Court opined that Rule 601

> is expressly intended to preserve existing Pennsylvania law.  "In general, the testimony of any person, regardless of [her] mental condition, is competent evidence, unless it contributes nothing at all because the victim is wholly untrustworthy.  Thus, in Pennsylvania, [a witness is] presumed competent to testify, and it is incumbent upon the party challenging the testimony to establish incompetence."FN6   Above all, given the general presumption of competency of all witnesses, a court ought not to order a competency investigation, unless the court has actually observed the witness testify and still has doubts about the witness' competency.
>
> _____
>
> FN6 The **presumption of competency also applies to child witnesses**.  In the case of a child witness, once evidence of corruption is established, the court must make a searching judicial inquiry into the mental capacity of a witness under the age of fourteen; that investigation involves whether the child witness has the following: "(1) capacity to observe or perceive the occurrence with a substantial degree of accuracy; (2) ability to remember the event which was observed or perceived; (3) ability to understand questions and to communicate intelligent answers about the occurrence, and (4) consciousness of the duty to speak the truth."  ***See also Commonwealth v. Delbridge***, [ ] 859 A.2d 1254 ([Pa.] 2004) (explaining judicial competency investigations apply in cases where sexual abuse complainants are young children because child's memory is uniquely susceptible to falsely implanted suggestions which may cause child difficulty in distinguishing fact from fantasy when called to testify).  "These concerns clearly become less relevant as a witness' age increases, ultimately being rendered totally irrelevant as a matter of law by age fourteen.  While the **age of fourteen** is somewhat arbitrary, it appears to give a sufficient buffer for slow developers such that any issue with

> competency at that age would need to be caused by some factor other than immaturity." This same competency standard also applies when a proposed witness suffers from a mental condition. Pa.R.E. 601(b). "If the trial court is presented with credible evidence that a proposed witness is . . . mentally retarded, the court shall conduct a judicial inquiry to determine the testimonial competency of the proposed witness. The factors . . . in making [this] determination are the same factors . . . used in determining the competency of a child witness."
>
> Claims that a witness' memory has been corrupted by insanity, mental retardation, hypnosis, or taint go to the competency of that witness to testify. The capacity to remember and the ability to testify truthfully about the matter remembered are components of testimonial competency. The party alleging a witness is incompetent to testify must prove that contention by **clear and convincing evidence**.

*Id.* at 109-10 (some citations omitted and emphases supplied).

Instantly, the trial court opined that Appellant's "request for a psychiatric examination of the child victims, however, was properly denied. As noted by the [c]ourt, other than his request for the examination, [Appellant] failed to provide a compelling reason or a substantial need for the psychiatric examination." Trial Ct. Op. at 10. We agree no relief is due.

At the hearing on the omnibus pre-trial motion, Appellant presented the following argument to the court in support of its request for a psychiatric examination:

> Counsel for Appellant: The second motion, Judge, in the omnibus motion is a motion to conduct an independent psychiatric examination. As Your Honor well knows, this may be granted within the sound discretion of the court. [Appellant] has a reason to doubt the competency of the

> alleged victims in this case. They were both minors at the time of the alleged incidents.
>
> We believe that the alleged victims have been influenced, improperly influenced, by, number one, the father who the two children still live with; the mother does not live with them anymore. Also by various caseworkers from Children and Youth and the police. And this influence, I believe, can only be shown by an independent professional. And in this case, I believe a psychiatrist or a child psychologist who can determine if, in fact, these children have been influenced or tainted in any way.

N.T., 2/17/12, at 7-8.

The court asked counsel if there was "anything specific that leads into a discussion as to why an involuntary psychiatric examination of a witness is compelling" in this case. *Id.* at 9. The court asked counsel if he had reviewed the records from Children and Youth. *Id.* at 10. Counsel responded that he did not and the Commonwealth stated that they had not been provided with those records. *Id.* Counsel for Appellant asked the Commonwealth if they were "using any Children and Youth Records for [the] trial" and the Commonwealth stated they were not. *Id.* at 10-11. Counsel for Appellant stated: "Then I don't need them. But again . . . ." *Id.* at 11. The court stated: "Well, if you're trying to put out an argument of taint, wouldn't a review of those records be essential to your need for a psychiatric evaluation . . . ." *Id.* The court concluded that "without any specificity, I'm not finding any compelling reason that's established that the psychiatric examination, which is intrusive and ordered in very rare circumstances, should even be considered." *Id.*

Appellant has not provided a compelling reason in support of his claim of error. *See Boich*, 982 A.2d at 109-10. We discern no abuse of discretion by the trial court. *See Alston*, 864 A.2d at 548.

Appellant's averments four and five baldly assert the court erred in denying his motion for discovery of certain records and materials in possession of the Luzerne County Child Advocacy Center. Appellant has not provided any citation to relevant authority in support of these claims. Therefore, we find these claims waived. *See* Pa.R.A.P. 2119(c); *Johnson*, 985 A.2d at 924.

In averment six, Appellant contends

> [t]he [c]ourt erred in denying [his m]otion that the [c]ourt order the release and production of any internal investigations, records, citizen's complaints and/or personnel files of the agents of the Luzerne County Children & Youth Services and the Luzerne County Child Advocacy Center, and should have conducted an in camera examination of prosecution files and reports to determine their relevance within the meaning of the law and what may have been discoverable.

Appellant's Brief at 19. In averment seven, Appellant reiterates the claim of error regarding the denial of discovery requests and refusal to conduct an *in camera* inspection. *Id.* at 20.

The trial court found Appellant waived these boilerplate allegations of error in paragraphs six and seven for failure to raise the issue or failure to preserve it with an objection. Trial Ct. Op. at 10. We agree no relief is due.

Our review of the record reveals that at the first hearing on the

- 11 -

omnibus motions, the court asked counsel for Appellant if he had received the records from Children and Youth and counsel responded that he did not. *See* N.T., 2/17/12, at 10-11. The court explained "if you want Children and Youth records, there's a process, and you would have to participate. And that doesn't happen instantly because they have to redact and review. So you would have to make that determination as soon as possible." *Id.* at 11-12. Counsel responded that he understood. *Id.* at 12. On April 18, 2012, another hearing was held on pre-trial motions. Counsel indicated that it **had received the records from Children and Youth**. N.T., 3/18/12, at 2-3 (emphasis added). No objection was raised before the trial court. *See id.* We find the issue waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In averments eight through twelve, Appellant contends the court erred in not instructing the jury regarding the lack of a prompt complaint. Appellant's Brief at 21. Our review is governed by the following principles:

> "[I]n reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this [C]ourt to determine whether the record supports the trial court's decision." In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide

discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

***Commonwealth v. Brown***, 911 A.2d 576, 582-83 (Pa. Super. 2006) (citation omitted).

As a prefatory matter, we consider whether Appellant has preserved any objection to the jury instructions. Appellant has not complied with Pa.R.A.P. 2119(c), nor has he cited any relevant law in support of his claims, other than Pa.R.Crim.P. 647. This rule provides:

> (A) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.
>
> (B) No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto **before the jury retires to deliberate**. All such objections shall be made beyond the hearing of the jury.

Pa.R.Crim.P. 647(a), (b) (emphasis added).

Our Supreme Court has opined:

> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been

rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

*Commonwealth v. Pressley*, 887 A.2d 220, 224 (Pa. 2005) (footnotes omitted). At the conclusion of the charge to the jury, the court inquired whether "either attorney [ha] anything else that we need to add?" N.T., 4/23/12, at 465. Counsel stated: "Nothing, Your Honor. Thank you." *Id.* Therefore, Appellant has waived this issue for failing to object before the jury retired to deliberate. *See* Pa.R.Crim.P. 647(b), *Pressley*, 887 A.2d at 224. Regardless, a review of the record belies Appellant's claim of error in not instructing the jury regarding the failure to make prompt complaint.

At trial, the court instructed the jury as follows:

> Another important point, before you may find the Defendant guilty of the crimes charged in this case, you must be convinced beyond a reasonable doubt that the acts charged did, in fact, occur. The evidence provided by [M.H. and S.H.] shows a delay in making a complaint. That delay in making a complaint does not necessarily make her testimony unreliable, but it may remove from the testimony its assurance of—of reliability accompanying the prompt complaint or outcry that a victim of a crime such as this would ordinarily be expected to make. Therefore, the delay in making a complaint by [M. H. and S.H.] should be considered in evaluating their testimony in deciding whether the acts occurred.
>
> You must not consider [M.H. and S.H.'s] delay in making a complaint as conclusive evidence that the acts did not occur. These are factors that you should consider as bearing on the believability of their testimony and

> should be considered by you in light of all the evidence that was presented in this case.

N.T., 4/23/12, at 448-49. In light of the jury charge on prompt complaint, the issue is meritless.

Next, in averment thirteen, Appellant contends the court erred in refusing to inquire of potential jurors the questions he submitted in writing on *voir dire,* or to permit him to do so. Appellant's Brief at 23. He states: "The presumption of innocence in this factually disturbing case is difficult for all of us, but without it, [Appellant] did not have a chance of a fair trial." *Id.* at 24. Appellant argues that there should have been an expanded *voir dire* because "[v]irtually no other type of criminal case can be compared with these types of crimes; just as any Penn State alumni who has suffered insult as a result of the crimes of Jerry Sandusky." *Id.* at 25. Appellant requested that prospective jurors, who had been victims of sexual misconduct or whose relatives or close associates had been victims, should have been sequestered to protect their privacy. *Id.* at 26.

On this issue our standard of review is as follows:

> It is well established that the scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error. Similarly, the trial court possesses discretion to determine whether counsel may propose their own questions of potential jurors during *voir dire*.

*Commonwealth v. Mattison*, 82 A.3d 386, 397 (Pa. 2013) (citations omitted).

Instantly, the trial court opined:

This [c]ourt's refusal to permit the overly specific questions proposed by [Appellant] was not a gross abuse of discretion as this [c]ourt did ask the prospective jurors generally whether they, or a friend or family member had been a victim of a crime, and whether they questioned their ability to be fair because the charges concerned sexual conduct with a minor. Additionally, this [c]ourt explored the possible bias of some of the prospective jurors by questioning them individually at sidebar.

There is no question that this [c]ourt's *voir dire* process was designed to secure a competent, fair, impartial and unprejudiced jury for [Appellant]. For example, the questions asked by this [c]ourt during *voir dire* and at sidebar of one of the jurors revealed that Juror number 7 suffered from child abuse, her daughter was abused as a child and her granddaughter was raped when she was a senior in high school. Juror number 7 was dismissed for cause. The dismissal of Juror number 7 demonstrates the effectiveness of this Court's *voir dire* process in dismissing a juror who may not have been fair, impartial and unprejudiced based upon her life experiences.

Trial Ct. Op. at 13. We agree no relief is due.

A review of the record belies Appellant's assertions. Instantly, prospective jurors were questioned at sidebar regarding, *inter alia*, their expressed reservations during *voir dire*. The court indicated that counsel could also question the prospective jurors at this time. N.T., 4/23/12, at 54. We discern no abuse of discretion. **See Mattison**, 82 A.3d at 397.

Appellant has waived the claims raised in averments fifteen and sixteen. He cites no legal authority in support of the claim that the court erred in denying his motion for a change in venue. **See Johnson**, 985 A.2d at 924. Similarly, Appellant cites no legal authority in support of his

objection to the process by which the court found that he was a sexually violent predator. Therefore, this issue is waived. ***See id.***

Finally, Appellant contends he was denied a fair trial by a jury of his peers under the "totality of the circumstances." Appellant's Brief at 13. Appellant did not raise this issue in his Rule 1925(b) statement of errors complained of on appeal, and therefore it is waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Even assuming, *arguendo*, the issue were not waived, it is meritless based upon Appellant's failure to establish any error by the trial court.

In Case Number 2, Appellant raises the following issues for our review:

> 1. Was . . . Appellant denied his right to a fair trial by the [l]ower [c]ourt's error in refusing to have the alleged child victim [C.C.] undergo psychological and psychiatric examinations to determine his competency to testify?
>
> 2. Was [Appellant] denied a fair trial when the [l]ower [c]ourt erred in finding the [c]hild competent to testify in this case, even after the District Attorney's Office provided copies of records and reports of interviews wherein the [c]hild contradicted the accusations previously made concerning the instant charges against . . . Appellant?
>
> 3. Was [Appellant] denied a fair trial when the [l]ower [c]ourt erred in failing to dismiss the charges or in permitting the [c]hild to testify even after the District Attorney's Office provided copies of records and reports of interviews wherein it was disclosed that the [c]hild was promised that he "would be able to testify in a private room alone" if he agreed to testify against his parents on the current charges?

4. Was . . . Appellant denied a fair trial when the [c]ourt improperly permitted the Commonwealth to introduce evidence that C.C. had killed cats while living with his parents, as a result of his alleged abuse[?]

5. Did the [c]ourt below err in not instructing the jury that A) the testimony of the [c]hild was rendered suspect because of lack of prompt complaint and that it is a factor that the jury must consider as to the sincerity of the [c]hild's complaint, and may justifiably produce doubt as to whether the offense indeed occurred, or whether it was a recent fabrication of the [c]hild and that B) the [c]hild's motive in making the complaints against . . . Appellant following his considerable period of silence was relevant as affecting the [c]hild's veracity?

6. Whether the [c]ourt erred in denying . . . Appellant's Motion for discovery of certain record and materials in the possession of the Wyoming County Children and Youth Services involving Patricia "Patsy" Paci?

7. Did the lower [c]ourt violate . . . Appellant's rights pursuant to due process and confrontation provisions of the Pennsylvania and United States Constitutions provisions, in denying [ ] Appellant's right to impeach the credibility of the [c]hild, Patricia "Patsy" Paci, and other Commonwealth witnesses with the hereinbefore mentioned records of the Luzerne County Child Advocacy Center and Wyoming County Children & Youth Services which may have been reflective of the motive or bias of the [c]hild and/or Patricia "Patsy" Paci?

8. Did the lower [c]ourt err in permitting the [c]hild and Patricia "Patsy" Paci to testify even after it was disclosed that the [c]hild had complained that Patricia "Patsy" Paci, who was charged with the [c]hild's custody and care, was improperly communicating with him concerning the instant case and had to be warned about her interference in this case?

Appellant's Brief at 5-6.[14]

First, Appellant contends the court erred in denying his motion to order psychological and psychiatric testing of the child to determine his competency to testify. Appellant's Brief at 19. Appellant claimed at the taint hearing[15] he made a showing of compelling need for psychological and psychiatric examinations. *Id.* at 20. In the motion, Appellant averred "[t]he district attorney's office has provided the defense with copies of records and reports of interviews wherein the child contradicts accusations previously made concerning the instant charges against [Appellant]." Def.'s Mot. for a Pre-Trial Hr'g to Establish the Competency of the Alleged Child Victim, 6/18/12, at 3. Appellant contends the records disclosed that the child was promised that he "would be able to testify in a private room alone" if he testified in the instant case. Appellant's Brief at 20. He avers "[t]he defense was also provided with copies of records and reports of interviews wherein it was disclosed that the child has complained that Commonwealth witness,

---

[14] We note Appellant raised twenty-eight issues in his Rule 1925(b) statement. We do not find waiver. *See Powell*, 100 A.2d at 614. Appellant's brief does not comply with Rule 2119(a), (c). *See* note 12, *supra*.

[15] Appellant refers to his Motion for a Pre-Trial Taint Hearing to Establish the Competency of the alleged Child Victim, citing the reproduced record at 47a. Appellant's Brief at 20. We note that the reproduced record does not contain pages 34a through 50a. This is of no moment because the motion is included in the certified record on appeal. However, the certified record does not include notes of testimony from a taint hearing. On July 13, 2012, the court denied the motion regarding the issue of taint. Order, 7/13/12.

Patricia Paci," an adult charged with his care, improperly communicated with him regarding this case. ***Id.*** at 20-21.

We review this issue for an abuse of discretion. ***See Alston***, 864 A.2d at 548. After careful consideration of the record, the parties' briefs, and the well-reasoned decision of the Honorable Polachek Gartley, we affirm this issue on the basis of the trial court's decision. ***See*** Trial Ct. Op. at 15-18 (holding (1) the child was fourteen years old at the time of trial and presumed competent to testify; (2) no clear and convincing evidence presented for an involuntary psychiatric examination; and (3) no promises were made to child that he could testify in private room).

Appellant, in statement of issues number four, avers he was denied a fair trial when the court permitted the Commonwealth to introduce evidence that the child had killed cats while living with his parents as a result of the alleged abuse. Appellant's Brief at 5. In the argument section of the brief, Appellant reiterates this claim without any citation to legal authority. Appellant's Brief at 22. We find this issue waived.[16] ***See Johnson***, 985 A.2d at 924.

---

[16] We note the trial court found the issue was waived and opined:

> [Appellant] argues that he was denied a fair trial when the [c]ourt permitted the commonwealth to introduce evidence of the [c]hild killing cats. [Appellant], however, never objected to the Commonwealth's introduction of evidence that [Appellant's] son killed cats while living with his parents as a result of the alleged abuse. Consequently,

Fifth, Appellant contends the court erred in not instructing the jury that the testimony of the child was suspect because of the lack of a prompt complaint.[17]  Appellant's Brief at 22-23.  As a prefatory matter, we consider whether Appellant has preserved his objection to the jury instructions.  **See** Pa.R.Crim.P. 647(b); **Pressley**, 887 A.2d at 224.

As the trial court opined: "As per defense counsel's request, the [c]ourt read the instruction to the jury on the [c]hild's delay in making a prompt complaint."  Trial Ct. Op. at 20.  The court instructed the jury as follows:

> Before you find [Appellant] guilty of the crimes charged in this case, you must be convinced beyond a reasonable doubt that the acts charged did, in fact, occur and that—that the—that they did, in fact, occur.  The evidence of [the child's] delay in making a complaint does not necessary [sic] make his testimony unreliable but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make.  Therefore, the delay in making the complaint should be considered in evaluating his testimony and deciding whether the acts occurred.  You must not consider [the child's] delay in making a complaint as conclusive evidence that the acts did not—did not occur, excuse me.  [The

---

[Appellant] waived his right to appeal the Commonwealth's introduction of evidence that the [c]hild killed his mother's cats.

Trial Ct. Op. at 15.  Additionally, Appellant's counsel cross-examined the child regarding his killing of cats.  N.T., 12/12/12, at 204-11.

[17] These claims of error appeared as averments fifteen through eighteen in Appellant's Rule 1925(b) statement.

- 21 -

child's] failure to promptly make a complaint in any nature and explanation for not making that complaint more timely are factors bearing on the believability of his testimony and should be considered by you in light of all of the evidence that's presented in this case.

N.T., 12/12/12, at 490-91.

The claim that the court did not give the requested charge is meritless. Furthermore, as the trial court found, Appellant did not object to the jury charge. Trial Ct. Op. at 20. At the conclusion of the charge, the court asked counsel "is there anything else?" Defense counsel responded: "Nothing, Your Honor. Thank you." N.T. at 517. Therefore, the issue is waived. *See* Pa.R.Crim.P. 647(b).

Issues six, seven and eight in Appellant's statement of the issues on appeal[18] concern the court's discovery rulings regarding the witness Patricia "Patsy" Paci.[19] Appellant contends the court erred in denying his motion for discovery of certain records and materials in the possession of the Wyoming County Children & Youth Services ("WCC&YS") involving Patricia "Patsy" Paci and the Luzerne County Child Advocacy Center.[20] *Id.* at 24-30. In support

---

[18] In the argument section of the brief, Appellant denominates these issues as issue II: "Issues relating to Impeachment of commonwealth Witness, Patricia Paci." Appellant's Brief at 24.

[19] Appellant has violated Pa.R.A.P. 2119(a), (c). *See* note 12, *supra*.

[20] We note that the trial court indicates that Appellant's motion to obtain records from WCC&YS was denied and that "[d]efense counsel acknowledged that he did not know if the records existed, that the records would have nothing to do with the alleged victim and that the records were from sixteen

of this claim, Appellant avers that he sought the court's approval of a subpoena of records and materials from the WCC&YS for the preparation of cross-examination. Appellant's Brief at 26. "Likewise, the lower [c]ourt denial of the discovery request improperly influenced the Jury's ability to fairly judge [Appellant's] guilt or innocence." *Id.*

> The [c]ourt violated [Appellant's] rights pursuant to due process and confrontation provisions of the Pennsylvania and United States Constitutions provisions, in denying [Appellant's] right to impeach the credibility of Patricia "Patsy" Paci with the hereinbefore mentioned records of [WCC&YS] which **may have been reflective of the motive or bias** of Patricia "Patsy" Paci.

*Id.* (emphasis added).

It is well-established that "[g]enerally, on review of an order granting or denying a discovery request, an appellate court applies an abuse of

---

(16) years ago." Trial Ct. Op. at 19, citing N.T., 7/13/12, at 4-7. Our review of the certified record on appeal in this case did not reveal notes of testimony from this pre-trial hearing. Appellant's motion for discovery of records from WCC&YS is dated October 16, 2012. *See* [Co-] Defendants' Joint Motion for Discovery of Certain Records and Materials in the Possession of the Wyoming County Children and Youth Services, 10/16/12. Appellant sought discovery of any and all records in Wyoming County regarding Patricia "Patsy" Paci. *Id.* at 4-5. The trial court scheduled a hearing on this pre-trial motion for November 9, 2012. Order for Pre-Trial Motion, 11/5/12. The record does not contain notes of testimony on this date. On November 9, 2012, the motion for Wyoming County Records was denied "after a full hearing on [Appellant's] Motion for Discovery held on November 9, 2012 . . . ." Order, 11/9/12. The trial court opined as to the request for records from the Luzerne County Child Advocacy Center, "the trial court properly denied [Appellant's] Motion[ ] and informed [him] that the records from [that] agency had to be subpoenaed." Trial Ct. Op. at 19. The trial court refers to the hearing dated July 13, 2012. As previously stated, there are no notes of testimony from the July 13th hearing in the certified record.

discretion standard." ***Boich***, 982 A.2d at 109. Instantly, the trial court opined:

> With respect to [Appellant's] Motion to obtain records from [WCC&YS] pertaining to the [c]hild's caretaker, the Motion was properly denied. Defense counsel acknowledged that **he did not know if the records existed, that the records would have nothing to do with the alleged victim and that the records were from sixteen (16) years ago**.
>
> Thus, based upon the pre-trial record, the errors raised by [Appellant] . . . have no merit. It is not the responsibility of the [t]rial [c]ourt to conduct discovery for [Appellant] or permit a fishing expedition for records that are remote and protected from disclosure.

Trial Ct. Op. at 19-20 (emphasis added and citations omitted). We agree no relief is due.

In the discovery motion, Appellant requested the court to order WCC&YS to produce the following documents:

> —Any and all information contained in the investigatory files of the [WCC&YS] regarding Patricia "Patsy" Paci;
>
> —any material as to whether any cases should be marked as founded, indicated or unfounded in the possession or under the control of the [WCC&YS] regarding Patricia "Patsy" Paci;
>
> —any witness confession or inculpatory statement in the possession of the [WCC&YS] regarding Patricia "Patsy" Paci;
>
> —the transcripts of recordings of any interview or statement of Patricia "Patsy" Paci;
>
> —the videotapes of any interviews or statements of Patricia "Patsy" Paci;

- 24 -

—all written and recorded statements and substantially verbatim oral statements of Patricia "Patsy" Paci in the possession of [WCC&YS].

[Co-]Defendants' Joint Motion for Discovery of Certain Records and Materials in the Possession of the Wyoming County Children and Youth Services, 10/16/12 at 4-5.

Appellant contends he needed the records in order to impeach the credibility of Patricia "Patsy" Paci. At trial, Appellant cross-examined Paci and stated to the court "I'm entitled to use this witness [Paci] to impeach [the child's testimony] to see if he was telling the truth." N.T., 12/12/12, at 283. The court responded "Okay." *Id.* We discern no abuse of discretion. *See Boich*, 982 A.2d at 109.

In the argument section of the brief, as issue IV, "Other Errors of Law that Alone or Together Acted to Deny [Appellant] of Her [sic] Right to a Fair Trial," Appellant baldly raises several issues.[21] Appellant's Brief at 31-32. Appellant has not provided any discussion of these claims with citation to relevant authority. Therefore, we find these issues waived. *See Johnson*, 985 A.2d at 924.

Judgment of sentence affirmed.

---

[21] The claims on page thirty-one of the brief were raised as averments nineteen and twenty in the Rule 1925(b) statement. The claims on page thirty-two of the brief were raised as averments twenty one, twenty-two, and twenty-four to twenty-six. *See* Appellant's Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 12/24/13 at 5, 6.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/9/2015</u>

①

| | | |
|---|---|---|
| ̷EALTH OF PENNSYLVANIA | : | IN THE COURT OF COMMON PLEAS |
| | : | OF LUZERNE COUNTY |
| v. | : | CRIMINAL DIVISION |
| ROBERT CARAVELLA | : | NO. 1431, 2500 OF 2011 |
| Defendant | : | |

............................................................................................................................

### ORDER

AND NOW, this 2nd day of June, 2014, upon review of the record in the above-captioned cases, it is hereby **DIRECTED** that the attached Opinion is entered pursuant to Pa.R.A.P. 1925(a) in response to the Defendant's Statement of Matters Complained of on Appeal.

The Clerk of Courts of Luzerne County is hereby **ORDERED** and **DIRECTED** to transmit the entire record in this case to the Superior Court of Pennsylvania, and shall serve a copy of this Order and Opinion on all counsel of record.

BY THE COURT:

POLACHEK GARTLEY,  J.

Copies:
Alexis Falvello, Esquire (No. 1431 of 2011)
Jenny Roberts, Esquire (No. 2500 of 2011)
Assistant District Attorneys

Andrew J. Katsock, III, Esquire
Private Counsel

2014 JUN -2 PM 4: 18
CRIMINAL DIV.
LUZERNE COUNTY
CLERK OF COURTS

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS

:      OF LUZERNE COUNTY

v.                             :          CRIMINAL DIVISION

ROBERT CARAVELLA              :       NO. 1431, 2500 OF 2011

Defendant                        :

..................................................................................................................

## OPINION

Before the Court is the Appeal of the Defendant, Robert Caravella, claiming the Trial Court committed twenty-two (22) errors in case No. 1431 of 2011 and twenty-seven (27) errors in case No. 2500 of 2011. By Per Curiam Order dated December 13, 2013 the Superior Court consolidated the Appeals as the cases involved the same Appellant and the same issues.

The Defendant at the time of the first trial on case 1431 of 2011 had a second case pending that was filed to 2500 of 2011.

**Procedural History Case No. 1431 of 2011:**

Following a trial by jury, the Defendant was found guilty of thirteen (13) counts of various crimes against his minor two nieces, M██████ and S████ H████████. The Defendant was charged as follows: Counts 1, 2 and 3, Involuntary Deviate Sexual Intercourse with a Child, 18 Pa. C.S.A. § 3123(b), felonies of the first degree; Counts 4, 5, and 6, Aggravated Indecent Assault of a Child, 18 Pa. C.S.A. § 3125(b), felonies of the first degree; Counts 7 and 8, Corruption of Minors, 18 Pa. C.S.A. § 6301(a)1, misdemeanors of the first degree; Counts 9 and 10, Endangering Welfare of Children, 18 Pa. C.S.A. § 4304(a)1, felonies of the third degree; and Counts 11, 12 and 13,

Contact/Communication with a Minor, 18 Pa. C.S.A. § 6318(a), felonies of the first degree.

At the time of verdict, the Defendant made a motion to waive the ninety day sentencing mandate on case 1431 of 2011 until completion of his second trial on Case 2500 of 2011 that was granted by the Court noting no objection from the District Attorney.

On October 28, 2013, the Defendant was sentenced to an aggregate sentence of twenty four (24) to forty eight (48) years as follows:

Count One – Involuntary Deviant Sexual Intercourse with a child Less then 13 years of age (F1) M.H. –
**60 months to 120 months mandatory minimum;**
Count Two - Involuntary Deviant Sexual Intercourse with a child less than 13 years of age (F1) S.H. –
**60 months to 120 months mandatory minimum consecutive to count 1**
Count Three -Involuntary Deviant Sexual Intercourse with a child less than 13 years of age (F1) S.H. –
**60 to 120 months mandatory minimum consecutive to count 2**
Count Four - Aggravated Indecent Assault of a Child (F1) M.H. -
**24 to 48 months consecutive to count 3**
Count Five - Aggravated Indecent Assault of a Child (F1) S.H. -
**24 to 48 months consecutive to count 4**
Count Six - Aggravated Indecent Assault of a Child (F1) S.H. -
**24 to 48 months consecutive to count 5**
Count Nine - Endangering the Welfare of Children; Course of Conduct (F3)
**12 to 24 months consecutive to count 6**
Count Ten - Endangering the Welfare of Children; Course of Conduct (F3)
**12 to 24 months concurrent to count 9**
Count Seven - Corruption of Minors (M1)
**9 to 18 months concurrent to count 10**
Count Eight - Corruption of Minors (M1)
**9 to 18 months concurrent to count 11**
Count Eleven - Unlawful Contact with a Minor (F1)
**12 to 24 months consecutive to count 8**
Count Twelve -Unlawful Contact with a Minor (F1)
**12 to 24 months consecutive to count 11**
Count Thirteen - Unlawful Contact with a Minor
**12 to 24 months concurrent to count 12**

2

## Procedural History Case No. 2500 of 2011:

Following a trial by jury, the Defendant was found guilty of Count 1, Criminal Conspiracy (Rape of Child), 18 Pa. C.S.A. § 903, a felony of the first degree; Count 2, Corruption of Minors, 18 Pa. C.S.A. § 6301(A)1, a misdemeanor of the first degree; and Counts 3, 4 and 5, Endangering Welfare of Children, 18 Pa. C.S.A. § 4304(A)1, felonies of the third degree, with the Defendant's minor son the victim in each enumerated count.

On October 28, 2013 this Court sentenced the Defendant in conjunction with case 1431 of 2011. He was sentenced on case 2500 of 2011 as to an aggregate sentence of eleven and one-half (11 ½) years to twenty-three (23) years as follows:

Count One – Conspiracy to commit Rape of a Child (F1)
**84 months to 168 months;**
Count Two - Corruption of Minors (M1)
**9 months to 18 months consecutive to Count 3;**
Count Three –Disseminating Sexual Materials to a Minor (F3)
**9 months to 18 months consecutive to Count 6;**
Count Four - Endangering the Welfare of Children (F3)
**12 months to 24 months consecutive to Count 1;**
Count Five - Endangering the Welfare of Children (F3)
**12 months to 24 months consecutive to Count 4;**
Count Six - Endangering the Welfare of Children (F3)
**12 months to 24 months consecutive to Count 5;**

The sentence was ordered to run consecutive to the sentence imposed in case No. 1431 of 2011. Therefore, an aggregate sentence on both cases was imposed of thirty-five and one-half (35 ½) years to seventy-one (71) years in a state correctional facility.

3

## Appeals:

On November 27, 2013 the Defendant filed a Notice of Appeal with the Luzerne County Clerk of Courts in both Case No. 1431 of 2011 and Case No. 2500 of 2011.

On December 4, 2013 and December 17, 2013, respectively, this Court issued an Order in each case directing the Defendant to file of record a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) and serve a copy of same upon the District Attorney and this Court pursuant to Pa. R.A.P. 1925(b)(1).

On December 24, 2013 the Defendant filed a Concise Statement of Errors Complained of on Appeal alleging twenty-two (22) errors of the Trial Court in case No. 1431 of 2011 and twenty-seven (27) errors of the Trial Court in case No. 2500 of 2011.

The Commonwealth requested an extension of time after receipt of all ordered transcripts to file a Response to the Concise Statement of Matters Complained of on Appeal.

The Commonwealth filed their Responses to Defendant's Concise Statements on February 24, 2014 and February 26, 2014, respectively.

## Summary of Factual History of Case No. 1431 of 2011:

The Defendant's deviant behavior was first documented between 2002 and 2005 wherein the Defendant's nieces, S████ and M████, alleged that the Defendant placed his mouth and tongue on their private parts (vagina) and asked them to place their mouths on his private parts (penis). He showed S████ magazines of naked grown-ups and showed M████ child pornography before he would sexually assault the children. Between 2002 and 2004, the girls' family lived in a double-block home in

4

Nanticoke with their mother's twin sister Carol Hann[1], her husband (the Defendant herein) and their son Colton.[2] (04/23/12, N.T. p. 164-65; 204).

In 2004 their aunt, uncle and cousin vacated the residence and moved to Plymouth, Pennsylvania.

S██████, eleven (11) years old and in the sixth grade at the time of trial, testified that she first recollected the Defendant improperly touching her when she was three (3) or four (4) years old. (04/23/12 N.T. p. 164-65) S██████ described the residence in detail including the layout of the rooms. (04/23/12 N.T. p. 166-67). She testified that her uncle would take her to his bedroom in Nanticoke and ask her to take off her pants. She remembered that the Defendant would open his pants with the zipper down and tell her to put her mouth on his private parts. (04/23/12 N.T. p. 168-69). She described the Defendant's penis as follows: "It was the same color as his normal skin. You could see the veins. And at the end it looked different, and there was a hole at the end of it". (4/23/12 N.T. p. 170). S██████ attested that her uncle would hold her legs open with his hands and put his mouth and tongue on her private parts, "On the front, inside and outside." (04/23/12 N.T. p. 171-73). She also described the Defendant's action when masturbating (putting his hand up and down on his penis), moaning and white discharge coming out of his penis onto toilet paper that he was holding. (04/23/12 N.T. p. 174-75)

S██████ testified that she was also sexually assaulted in her uncle's bedroom in Plymouth. She again described the layout of the rooms and stated that her uncle

---

[1] Carol Hann was the co-defendant of Defendant herein she was convicted by a jury on December 12, 2007 of Rape of a Child, incest and other charges.

[2] The child was the victim in the subsequent criminal trial wherein the Defendant and Carol Hann were convicted.

touched her in the manner described approximately ten (10) times in all. (04/23/12 N.T. p. 176-77). S█████ attested that the last time her uncle touched her was when she four (4) years old and that she did not tell anyone that it happened because she wanted to forget about it and was embarrassed. S█████ stated that she did not want to do these things but she trusted her uncle at the time. She eventually told her sister when she was eight (8) years old. (04/23/12 N.T. p. 178).

M█████, seventeen (17) years old at the time of trial, testified that she was around six (6) years old when her uncle made would make her watch child pornography with him from his computer. She recollected that he would make her sit on his lap while he watched the child pornography and then he would take her upstairs to his room. (04/23/12 N.T. p. 210-211). She described the pornography as children and adults touching each other. Once upstairs, M█████ testified that the Defendant would take her clothes off and touch her vagina with his tongue and fingers. He made her rub his penis with her hands and put his penis in her mouth. (04/23/12 N.T. p. 210-213). She recollected that he told her not to tell anyone and that she did not know it was wrong. Morgan stated that the sexual assaults occurred more than five (5) times. (04/23/12 N.T. p. 218).

S█████ and M█████s father testified that in 2009 his daughter M█████ told him that Uncle Bobby had touched her. He indicated that he asked S█████ thereafter and she told him what happened to her. He went to the police one week after M█████ disclosed. (04/23/12 N.T. p. 234-36). He testified that his daughters would go back and forth between the shared home and that the Defendant was the sole supervisor of his daughters at times.

Detective Captain William Shultz of the Nanticoke police department investigated the allegations after he received a call from their father on August 2, 2010. On August 19, 2010, Detective Shultz and others interviewed the children at the Child Advocacy Center in Wilkes-Barre. The girls cried and were afraid that no one would believe them. The father was upset and the mother would not cooperate or get involved because she did not believe them. (04/23/12 N.T. p. 255-58).

The Defendant testified in his defense. He testified that the girls often came to his house to play with his son. He was never alone with the girls and he is innocent of all crimes charged. On cross-examination, he agreed that sometimes he was the only adult watching the girls and that it is possible that he had access and opportunity to molest the girls. He thought the girls came forward with these allegations because they were mad at his wife. (04/23/12 N.T. p. 326-32).

## Summary of Factual History of Case No. 2500 of 2011:

On December 7, 2012, the jury rendered a verdict regarding the Defendant, Robert Caravella on a second criminal action involving his minor son. This trial occurred after the completion of the jury trial wherein the Defendant was found guilty of multiple accounts of sexual assault wherein his two minor nieces where the victims.

On Case 2501 of 2011, the Defendant, Robert Caravella, was tried along with his wife, Carol Ann Hann, who was charged with having a sexual relationship with her son, hereinafter referred to as "Child". The incestuous relationship began when the Child was eight (8) years old and continued until he was twelve (12) years of age. The sexual relationship was not discovered until several months after the Child was removed from the couple's home due to the unsanitary and deplorable conditions at the child's

7

residence.     At the time of his removal from the residence, the house was in a deplorable condition in that it overwhelmingly smelled of human urine and the walls, carpet and the sink were visibly filthy.    There was garbage strewn throughout the residence, rotten food on the kitchen counters and small flies and random insects flying throughout the kitchen. The house was also infested with cats that Defendant would catch and raise. The floors were covered in dirt and filth and were sticky to the touch. (12/12/12 N.T. p. 84-87; 103-107).  The Child was covered in dirt and smelled of body odor and urine. The officer required the Child to take an immediate shower at the local ambulance company due to the overwhelming smell.   The Child was taken into protective custody by Luzerne County Children & Youth and at the request of Ms. Hann, the Child went to live with her female cousin, Patricia Paci.  (12/12/12 N.T. p. 89-90; 107-08).

The Child attested that when he resided with his parents he rarely bathed or showered and recalled showering once a month. He rarely brushed his teeth, did not cut his own food, and did not get dressed or change his clothes for significant periods of time. The Child testified that he ate with his hands. He noted that he, his father and his autistic uncle would urinate on the floor in the house. He also recollected having flea bites, especially during the summer months. (12/12/12 N.T. p. 173-76)

Upon residing with Ms. Paci, the Child ate with his hands, did not know how to use a knife, shower, brush his teeth, button, zip or tie.  The child's eyes were sensitive to light and he needed glasses. Although his parents claimed he was cyber schooled through Commonwealth Connections Academy, the Child did not know how to use the computer for school work but stated that he knew how to use the computer to watch

pornography. The Child masturbated in front of people on the outside of his clothes and stared at women's chests. When he would get mad at Ms. Paci, he would urinate on the floor and on one occasion killed Ms. Paci's cat. (12/12/12 N.T. p. 249-54; 264).

In January of 2011, when Ms. Paci turned on the shower for the Child, he pulled down his pants and underwear and asked Ms. Paci if she would be his mother. After Ms. Paci scolded the Child for his actions, she explained that mothers do not have sexual relations with their children. The following day, Ms. Paci enrolled the Child in therapy at the Children's Service Center. (12/12/12 N.T. p. 269-70).

At trial, the Child testified that he had a sexual relationship with his mother since he was eight (8) years old. (12/12/12 N.T. p. 181). His father, the Defendant, Robert Caravella, began showing him pornography at the age of seven (7) and on his eighth birthday his father called him upstairs to have sex with his mother. (12/12/12 N.T. p. 180-81). He attested that he had sex with his mother approximately four (4) times a week usually while his father observed. He noted that his father watched the sexual acts and coached him as to how to better perform. (12/12/12 N.T. p. 181-82). He further testified that there were times when his mother forced him to have sex and out of anger he would kill one of her cats. In detail he explained how he boxed the cats until they died. (12/12/12 N.T. p.185-87).

The Defendant testified that he never showed pornography to his son. He testified that it was impossible for his wife to have sexual relations with their son because his wife said it never happened.

## Issues on Appeal in Case No. 1431 of 2011:

The Defendant raises twenty-two (22) issues for Appeal. None of the issues raised, however, have any merit. Every one of the twenty-two (22) issues are addressed below except for those boilerplate allegations of error set forth in paragraphs 3-7, 12, 16, and 21 which were either not raised by defense counsel and ruled upon by this Court or not preserved with an objection and are therefore waived.

The Defendant argues that this Court erred when it denied his request for psychological and psychiatric examinations of the child victims. The Defendant alleges in his Statement of Errors in paragraphs 1 and 2 that:

> **The Court erred when it denied the Defendant's Motion that the Court order psychological and psychiatric examinations of the alleged child victims to assess their competency to testify in this case and to advise the Court as to whether the children were prone to lie or assess their reliability as factual witnesses to testify in this case.**

Defendant's request for a psychiatric examination of the child victims, however, was properly denied. As noted by the Court, other than his request for the examination, the Defendant failed to provide a compelling reason or a substantial need for the psychiatric examination. *Com. v. Boich, 2009 Pa. Super. 195, 982 A.2d 102, 110 (Pa. Super. Ct. 2009).* (2/17/12 N.T. pp. 7-12). Defendant's request for a psychiatric examination of the child victims was, therefore, properly denied.

Defendant's Statement of Errors set forth in paragraphs 8-11; allege that this Court erred in failing to instruct the jury regarding lack of prompt complaint. Defendant's allegations of error, however, are without merit. This Court did give the jury instruction regarding the failure to make a prompt complaint. (2/17/12 N.T. pp. 350-351, 372, 448-448). Therefore, the errors Defendant raises in paragraphs 8-11 must fail.

Errors raised by Defendant in paragraphs 13, 17-19 must also fail. Defendant's arguments of error go to the sufficiency of the evidence.

In reviewing sufficiency of evidence claims, the Superior Court must determine whether, viewing all of the evidence at trial, as well as all of the reasonable inferences to be drawn therefrom, in a light most favorable to Commonwealth, the jury could have found that each element of offense was proven beyond a reasonable doubt, and both direct and circumstantial can be considered equally when assessing sufficiency of evidence. *Com. v. Woodruff, 447 Pa. Super. 222, 668 A.2d 1158 (1995).* There is no question here that when viewing the evidence in a light most favorable to the Commonwealth that there was sufficient evidence to establish Defendant's guilt on all charges beyond a reasonable doubt. Defendant's claims of alleged error therefore must fail.

In paragraphs 14 and 22, the Defendant claims that this Court erred when it classified the Defendant as a sexually violent predator and also claims this Court erred in the process used to find the Defendant a sexually violent predator. Since the Defendant was sentenced in both cases at the same time and the Defendant raised the same error in paragraph 14 as he did in paragraph 22 in Case No. 2500 of 2011 below, the reasoning set forth in Case No. 2500 is incorporated herein by reference as though set forth in its entirety herein in response to the alleged error in paragraph 14.

With respect to the alleged error in paragraph 22, alleging that this court erred in the process used to find the Defendant a sexually violent predator, this Court followed Pennsylvania law. 42 Pa. C.S.§ 9799.10, et seq. Pennsylvania law requires that after a conviction of a sexually violent offense, but prior to sentencing, the court shall order the

11

individual to be assessed by the Sexual Offenders Assessment Board to determine if the individual meets the legal criteria to be designated a sexually violent predator. 42 Pa. C.S.§ 9799.24.

The sentencing of the Defendant in this matter was continued upon the Defendant's request several times so the Defendant could attain his own expert on the Sexual Offender recommendation. The Defendant filed several continuations in that the he could not locate a defense expert and then to wait for completion of the evaluation. At the time of sentencing, the Defendant did not present the long awaited expert report and testified on his own behalf as to the recommendations of the Sexual Offender Assessment Board. After a lengthy hearing, the court found the Defendant to be a Sexually Violent Predator.

Since this Court applied the law as written, and accommodated the Defendant's numerous request for continuances, this Court did not err in the process used to find the Defendant a sexually violent predator. Based upon the foregoing, Defendant's allegations of error must be denied.

The Defendant claims in paragraph 15 that this court erred when it denied or refused to ask several of the voir dire questions proposed by the Defendant. The scope of voir dire examination of the jury is for the sound discretion of the trial court. *Commonwealth v. Lark, 504 A.2d 1291, 350 Pa. Super. 558, 565 (1986). (citation omitted).* Only a gross abuse of discretion will result in the trial court being overruled. *Id.*

During this Court's review of Defendant's proposed voir dire, defense counsel agreed that his proposed questions in one through five were already covered in the

12

general instruction. (04/23/12 N.T. p. 6). Defense counsel otherwise objected to this Court denying his voir dire questions 6-9, 11, 13-15 and 17-20 claiming that the Court's ruling prevents him from being able to intelligently exercise the Defendant's right to challenge for cause and also to intelligently use his allotment for peremptory challenges. (04/23/12 N.T. pp. 7-10).

In addition to this Court providing general instructions, this Court did adopt Defendant's voir dire questions, 1, in part; 16 and 21. This Court's refusal to permit the overly specific questions proposed by Defendant was not a gross abuse of discretion as this Court did ask the prospective jurors generally whether they, or a friend or family member had been a victim of a crime, and whether they questioned their ability to be fair because the charges concerned sexual conduct with a minor. Additionally, this Court explored the possible bias of some of the prospective jurors by questioning them individually at sidebar.

There is no question that this Court's voir dire process was designed to secure a competent, fair, impartial and unprejudiced jury for the Defendant. For example, the questions asked by this Court during voir dire and at sidebar of one of the jurors revealed that Juror number 7 suffered from child abuse, her daughter was abused as a child and her granddaughter was raped when she was a senior in high school. (04/23/12 N.T. pp. 65-66). Juror number 7 was dismissed for cause. The dismissal of Juror number 7 demonstrates the effectiveness of this Court's voir dire process in dismissing a juror who may not have been fair, impartial and unprejudiced based upon her life experiences.

13

Next, in paragraph 20 the Defendant argues that the Court erred in not dismissing the criminal charges against the Defendant, when the Commonwealth's testimony was almost devoid of any specific dates, from which the defendant might be able to raise an alibi defense. Defendant argues that the testimony that the crimes took place "between January 1, 2002 and January 1, 2005", but without more specificity, made a possible defense of alibi impossible.

When the Commonwealth alleges a course of conduct as it did in this case, specific dates are not required. When "the precise date of [an offense] is not known or if the offense is a continuing one," Rule 560(B)(3) of the Pennsylvania Rules of Criminal Procedure provides that a criminal information "signed by the attorney for the Commonwealth shall be valid and sufficient in law if it contains . . . an allegation that it was committed on or about any date fixed within the statute of limitations[.]" Moreover, the Commonwealth is afforded greater latitude where the offense is a continuous course of conduct involving a child especially when the course of conduct is alleged to have occurred over a period of months or years. *Commonwealth v. Brooks, 7 A.3d 852, 858 (Pa.Super. 2010).*

Additionally, the lack of specificity of dates has not affected the Defendant's ability to present an alibi defense because alibi has never been an issue. The alibi defense was never asserted by Defendant. The Defendant has simply argued that the offenses did not happen. The testimony that was established during trial did not make it impossible for him to be the perpetrator. Where a defense rests on timing rather than location, it is not considered an alibi. *Commonwealth v. Sileo, 32 A.3d 753, 767 (Pa. Super.2011).* Thus, Defendant's alleged error in paragraph 20 must fail.

14

## Issues on Appeal in Case No. 2500 of 2011:

The Defendant raises twenty-seven (27) issues for Appeal in Case No. 2500 of 2011. None of the issues raised, however, have any merit. Each of the twenty-seven (27) issues is addressed below.

1. The Defendant argues that he was denied a fair trial when the Court permitted the Commonwealth to introduce evidence that the Defendant's son killed cats while living with his parents as a result of the alleged abuse.

The Defendant argues that he was denied a fair trial when the Court permitted the Commonwealth to introduce evidence of the Child killing cats. The Defendant, however, never objected to the Commonwealth's introduction of evidence that the Defendant's son killed cats while living with his parents as a result of the alleged abuse. Consequently, the Defendant waived his right to appeal the Commonwealth's introduction of evidence that the Child killed his mother's cats. **Issues** must be preserved at each and every stage of review; otherwise, they are deemed waived and cannot subsequently be raised on **appeal.** *Commonwealth v. Burchard, 349 Pa.Super. 456, 459, 503 A.2d 936, 937 (1986).*

Next, the Defendant argues that the Court erred when it found the Child competent to testify.

2. The Court erred when it denied the Defendant's Motion that the Court order psychological and psychiatric examinations of the Child to assess his competency to testify.

3. The Court erred when it denied the Defendant's Motion that the Court order psychological and psychiatric examinations of the Child to assess whether the child was prone to lie or his reliability as a factual witness to testify in the case.

4. The Court erred in finding the Child competent to testify, even after the Commonwealth provided copies of records and reports of interviews wherein the Child contradicted the accusations previously made concerning the instant charges against the Defendant.

15

5. The Court erred in finding the Child competent to testify, even after the Commonwealth provided copies of records and reports of interviews wherein it was disclosed that the Child was promised that he "would be able to testify in a private room alone" if he agreed to testify against his parents on the current charges.

The Court did not err when it denied Defendant's request for psychological and psychiatric examinations and found the Child competent to testify. The general rule in Pennsylvania is that every person is presumed competent to be a witness. Pa.R.E. 601(a). *Com. v. Delbridge*, 578 Pa. 641, 662, 855 A.2d 27, 39 (2003). Presently, the prevailing rule is that competency is presumed where the child is more than 14 years of age. *Rosche v. McCoy*, 397 Pa. 615, 621, 156 A.2d 307, 310 (1959). The Child herein was 14 years old at the time of trial. The Child was, therefore, presumed competent to testify.

The party alleging a witness is incompetent to testify must prove that contention by clear and convincing evidence. *Com. v. Bolch*, 2009 Pa. Super. 195, 982 A.2d 102, 110 (Pa. Super. Ct. 2009). A court, therefore, ought not to order an involuntary psychiatric examination of a witness unless the record unequivocally demonstrates a compelling need for the examination. *Id.* The basis of the Defendant's request for a psychiatric examination of the Child was that the Child made some contradictory statements. Contradictory statements are subject to cross examination and do not unequivocally demonstrate a compelling need for a psychological or psychiatric examination. Therefore, Defendant's request was properly denied.

In alleged error 6, Defendant argues that the Court erred when it failed to dismiss the charges against the Defendant based upon promises made to the Child that he would be able to testify in a private room.

16

6. **The Court erred in failing to dismiss the charges against the Defendant after learning that the Child was promised that he "would be able to testify in a private room alone" if he agreed to testify against his parents on the current charges.**

The record is clear that the child was never promised that he would be able to testify in a private room alone if he agreed to testify against his parents on the current charges. Detective Parker of the Luzerne County District Attorney's Office spoke to the Child about testifying in court. Although the Child may have thought that he would be able to testify in a private room alone, Detective Parker told the Child that was **not** what would happen as he would have to most likely testify in front of his parents, however, he would be able to look the other way and not look at them. (07/13/12 N.T. p. 31). (emphasis added). Since the involvement of Detective Parker and Attorney Roberts in this case, the Child knew that he would have to testify in open court. The Child testified at the preliminary hearing in front of his parents so he did know that he was going to have to testify at trial in front of his parents. (07/13/12 N.T. p. 33). Therefore, the Defendant's argument that the Court should have dismissed the charges for promises made to the Child was properly denied as no promises were made to the Child regarding his ability to testify in a private room.

Next, the Defendant argues the Court erred in permitting the Child and Patricia Paci to testify.

7. **The Court erred in permitting the Child and Patricia Paci to testify after it was disclosed that the Child had complained that Patricia Paci, who was charged with the Child's custody and care, was improperly communicating with him concerning the case and had to be warned about her interference in the case.**

Defendant's argument has no merit. There was no evidence that Patricia Paci was improperly communicating with the Child concerning the case and that she had to

17

be warned about her interference in the case. To the contrary, Ms. Paci inquired of Assistant District Attorney Roberts if they should be discussing the case with the Child. Attorney Roberts told them that she did not want them talking to the Child about the case and that the only people that he should be talking to about the case are his counselors. (07/13/2012 N.T. p.30).

Defendant also argues that the Court erred when it denied the Defendant's requests for discovery.

8. The Court erred in denying the Defendant's Motion for Discovery of certain records and materials in the possession of the Luzerne County Child Advocacy Center involving the Child.

9. The Court violated the Defendant's due process rights and right of confrontation provisions of the Pennsylvania and United States Constitutions when it denied the Defendant the right to impeach the credibility of the Child, Patricia Paci and other Commonwealth witnesses with the records and materials in the possession of the Luzerne County Child Advocacy Center involving the Child which may have been reflective of the motive or bias of the Child and Patricia Paci.

10. The Court erred in denying the Defendant's Motion for discovery of records and materials in the possession of the Wyoming County Children and Youth Services involving Patricia Paci because Patricia Paci's credibility was in issue.

11. The Court violated the Defendant's due process rights and right of confrontation provisions of the Pennsylvania and United States Constitutions when it denied the Defendant the right to impeach the credibility of Patricia Paci with the records of the Wyoming County Children and Youth Services which may have been reflective of the motive or bias of Patricia Paci.

12. The Court erred in denying the Defendant's Motion that the Court Order the release and production of any internal investigations, records, citizen's complaints and/or personnel files of the agents of the Luzerne County Children & Youth Services and the Luzerne County Child Advocacy Center, as such records were relative to the credibility and truthfulness of representatives and employees of the agency who were or might have been called as witnesses in this matter.

18

13. The Court erred in not conducting an in camera examination of the Luzerne County Children & Youth Services and the Luzerne County Child Advocacy Center prosecution files and reports to determine their relevance within the meaning of the law and what may have been discoverable.

14. The Court's denial of the Defendant's discovery requests of the Luzerne County Children & Youth Services and the Luzerne County Child Advocacy Center records and the Court's refusal to conduct an in camera inspection violated the Defendant's rights under the 6th, 10th, 11th, 15th and 14th Amendments to the United States Constitution and the Pennsylvania Constitution - - his right to due process, to a fair trial, to the effective assistance of counsel, to prepare a defense, to confront and cross-examine witnesses and impeach their credibility.

The pre-trial record is clear that all of the Luzerne County Children and Youth Services CPS file records as well as the DVD's from the Child Advocacy Center that were in the possession of the Commonwealth were provided by the Commonwealth to counsel for Defendant. To further the Defendant's request for discovery, the trial court did provide defense counsel with two Orders for additional discovery of Luzerne County Children and Youth Services records. (07/13/2012 N.T. pp. 3-10).

With respect to the Defendant's Motion for Discovery of records and/or complaints against Luzerne County Children and Youth Services workers and his request for records from the Luzerne County Child Advocacy Center, the trial court properly denied Defendant's Motions and informed the Defendant that the records from those agencies had to be subpoenaed. (07/13/2012 N.T. pp.6, 22).

With respect to Defendant's Motion to obtain records from Wyoming County Children and Youth Services pertaining to the Child's caretaker, the Motion was properly denied. Defense counsel acknowledged that he did not know if the records existed, that the records would have nothing to do with the alleged victim and that the records were from sixteen (16) years ago. (07/13/2012 N.T. pp. 4-7).

19

Thus, based upon the pre-trial record, the errors raised by Defendant in paragraphs 8 through 14 have no merit. It is not the responsibility of the Trial Court to conduct discovery for the Defendant or permit a fishing expedition for records that are remote and protected from disclosure.

The Defendant also argues that the Court erred when it failed to instruct the jury regarding the Child's lack of prompt complaint. Specifically, the Defendant argues:

15. The Court erred in not instructing the jury that the testimony of the Child was rendered suspect because of lack of prompt complaint and bias against the Defendant.

16. The Court erred in not instructing the jury that the lack of prompt complaint by the Child is a factor that the jury must consider as to the sincerity of the Child's complaint.

17. The Court erred in not instructing the jury that the lack of prompt complaint by the Child may justifiably produce doubt as to whether the offense indeed occurred, or whether it was a recent fabrication of the Child.

18. The Court erred in not instructing the jury that the Child's motive in making the complaints against the Defendant following his considerable period of silence was relevant as affecting the Child's veracity.

The Defendant's claims of error in paragraphs 15 through 18 must also fail. As per defense counsel's request, the Court read the instruction to the jury on the Child's delay in making a prompt complaint. (12/12/12 N.T. pp. 423-432, 490-491). The Defendant never objected to the proposed jury instruction nor proposed that the jury be instructed in any other way. A defendant must object to a jury charge at trial, lest his challenge to the charge be precluded on appeal. *Com. v. Corley*, 432 Pa. Super. 371, 381, 638 A.2d 985, 990 (1994). Therefore, Defendant's challenge to the jury instruction as given must be precluded on appeal.

20

The Defendant's additional claims of error alleged in paragraphs 19, 20 and 21 must also fail. Defendant's arguments go to the sufficiency of the evidence.

19. The Court erred in not finding that the charges had been fabricated by the Child and Patricia Paci and that the Defendant was innocent as a matter of law.

20. The Court erred in not ruling that the evidence was insufficient as a matter of law to establish the Defendant's guilt beyond a reasonable doubt on the charges.

21. The Court erred in not finding that the Defendant was innocent as a matter of law as a result of the Childs in-court testimony that he lied numerous times regarding his statements to prosecutors and child welfare authorities.

In reviewing sufficiency of evidence claims, the Superior Court must determine whether, viewing all of the evidence at trial, as well as all of the reasonable inferences to be drawn therefrom, in a light most favorable to Commonwealth, the jury could have found that each element of offense was proven beyond a reasonable doubt, and both direct and circumstantial can be considered equally when assessing sufficiency of evidence. *Com. v. Woodruff, 447 Pa. Super. 222, 668 A.2d 1158 (1995)*. There is no question here that when viewing the evidence in a light most favorable to the Commonwealth that there was sufficient evidence to establish Defendant's guilt on all charges beyond a reasonable doubt. Therefore, Defendant's claims of alleged error must fall.

Next, the Defendant argues that the Court erred when it classified the Defendant as a sexually violent predator.

22. The Court erred in finding that the Defendant be classified as a sexually violent predator.

To help determine if a Defendant should be classified as a sexually violent predator, the trial judge orders an assessment to be done by the Sexual Offender

21

Assessment Board ("SOAB"). 42 Pa. C.S. §9799.24. At a hearing prior to sentencing the Commonwealth must establish by clear and convincing evidence that the Defendant has been convicted of a statutorily specified offense and has been determined, through a statutorily designated process, to have a mental abnormality or personality disorder that makes the defendant likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. § 9799.12, "Sexually violent predator."

At the Sexual Offender Assessment Board Hearing in this case, it was revealed that the Defendant retained an expert of his own, Dr. Foley, and that Dr. Foley concurred with the Sexual Offender Assessment Board's determination that the Defendant met the statutory threshold for designation as a sexually violent predator in Pennsylvania. (10/28/13 N.T. p. 6). However, when the Defendant was asked to further stipulate to the Sexual Offender Assessment Board's report dated July 5, 2012, the Defendant would not stipulate to the findings within the report and the Defendant requested a hearing. (10/28/13 N.T. p. 11).

At the hearing, the Commonwealth presented the expert testimony of Ms. Paula Burst. Ms. Burst prepared a report on behalf of the Sexual Offenders Assessment Board dated July 5, 2012. Although the Defendant was offered the opportunity to participate in the report, he declined to participate. In connection with the preparation of her report, Ms. Burst reviewed the Sexual Offender Assessment Board Investigator's report; the Luzerne County Court Order for the assessment; the criminal information regarding Case No. 1431 of 2011; the police criminal complaint and affidavit of probable cause; Nanticoke police incident report, Child Line report; and Child Protective Service Investigation reports. (10/28/13 N.T. p.18).

22

Ms. Burst testified that when assessing whether or not a Defendant is a sexually violent predator, she must take into consideration two statutory criteria. (10/28/13 N.T. pp. 18-20). The statute requires her to address whether or not the Defendant possesses either a mental abnormality or personality disorder that makes it likely that they will engage in predatory sexual behavior. (10/28/13 N.T. pp. 18-20).

Ms. Burst testified that the Defendant met the statutory criteria to be classified as a sexually violent predator. Ms. Burst testified that the Defendant met the full diagnostic criteria for the mental abnormality of pedophilia as the Defendant assaulted two minor victims, whose ages span between one and nine in total which meets the full classification for pedophilia. (10/28/13 N.T. p. 19). Ms. Burst testified that the essential features of pedophilia are over the course of at least six months recurrent intense sexually arousing fantasy, sexual urges or behaviors involving sexual contacts with a prepubescent child under the age of thirteen (13). Secondly, Ms. Burst explained that the person has acted on these sexual urges or fantasies; and, thirdly, the person is at least sixteen (16) years of age and at least five years older than the child. Ms. Burst further testified that the Defendant also met the second prong of the assessment criteria, as the Defendant's offenses and behavior was predatory in nature. (10/28/13 N.T. p. 20). She testified that in her opinion he will reoffend in a sexual manner as he meet the diagnostic criteria for pedophilia, and pedophilia is considered an acquired or congenital condition that is a life-long chronic condition. His diagnosis of pedophilia predisposes him towards committing sexual offenses in the future, and his diagnosis if pedophilia means that he has an internal drive towards sexual offending.

23

Based upon the credible expert opinion testimony of Ms. Brust of the Sexual Offender Assessment Board, as well as the September 16th letter and the statements of counsel that the court-appointed defense expert concurred with the SOAB's determination that the Defendant met the statutory threshold for designation as a sexually violent predator, this Court found Ms. Burst established by clear and convincing evidence that the Defendant met the two criteria necessary to be deemed a sexually violent predator pursuant to the Pennsylvania statute. (10/28/13 N.T. pp. 33-34).

Therefore, based upon this Court's findings, the Court did not err when it classified the Defendant as a sexually violent predator.

The Defendant also claims the Court committed errors during voir dire of the jurors and when giving jury instructions.

23. The Court erred in refusing to inquire of potential jurors the questions submitted in writing by the Defendant, or in the alternative, to permit defense counsel to do so.

24. The Court erred in refusing to submit the instructions to the jury at the close of evidence that were submitted in writing by the Defendant, pursuant to Pa. R.Crim.P. 647.

The Court did not err when questioning or instructing the jury. Nor did the Defendant object to this Court's questioning or instructing of the jury. Therefore, any claim that the Court erred is without merit and waived.

The Defendant's arguments in 25, 26 and 27 also go to the sufficiency of the evidence.

25. The Court erred in denying the Defendant's Post-Trial Motions for a judgment of acquittal or a new trial because the verdict was based on insufficient evidence and/or was against the weight of the evidence.

26. The evidence submitted at trial by the Commonwealth was insufficient as a matter of law to establish the Defendant's guilt beyond a reasonable doubt on the charges.

24

27. The Court erred in denying the Defendant's Motions for judgment of acquittal or 'a new trial because the Commonwealth's principal witnesses gave contradictory and inconsistent testimony concerning material elements of the crimes charged thereby making the jury's verdict based on insufficient evidence.

Again, in reviewing sufficiency of evidence claims, the Superior Court must determine whether, viewing all of the evidence at trial, as well as all of the reasonable inferences to be drawn therefrom, in a light most favorable to the Commonwealth, the jury could have found that each element of offense was proven beyond a reasonable doubt, and both direct and circumstantial can be considered equally when assessing sufficiency of evidence. *Com. v. Woodruff, 447 Pa. Super. 222, 668 A.2d 1158 (1995).* There is no question that when viewing the evidence in a light most favorable to the Commonwealth here, that there was sufficient evidence to establish Defendant's guilt on all charges beyond a reasonable doubt. Therefore, Defendant's claims of alleged error must fail.

**END OF OPINION**